UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>DANESXY ORTEGA,<br><br>                    Defendant. | CASE NO. 2:22-cr-00176-LK<br><br>ORDER DENYING MOTION FOR TEMPORARY RELEASE |

This matter comes before the Court on Defendant Danesxy Ortega's Motion for Temporary Release. Dkt. No. 172. Mr. Ortega seeks an order granting him temporary release from the Federal Detention Center ("FDC"), where he is currently detained, to seek outside medical treatment. The Government opposes the motion. Dkt. No. 181. For the reasons set forth below, the Court denies the motion and grants the parties' motions to seal documents related to this motion.

I. BACKGROUND

Mr. Ortega was originally indicted on October 12, 2022. Dkt. No. 1. He was arrested and arraigned on various charges relating to robberies of banks and marijuana dispensaries shortly thereafter. Dkt. No. 14.

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 1

When he was arraigned, Mr. Ortega stipulated to detention, and Magistrate Judge Theiler detained him. Dkt. Nos. 14, 17. Noting that Mr. Ortega's criminal record "includes warrant activity for failure to appear and convictions for escape" and finding that (1) he "poses a risk of nonappearance based on convictions for escape, and prior warrant for failure to appear, as well as unknown or unverified background information"; and (2) he "poses a risk of danger based on the nature of the offenses, prior criminal record, a history of possessing firearms, and alleged use of firearms in the instant offenses," Judge Theiler held that "[t]here does not appear to be any condition or combination of conditions that will reasonably assure [Mr. Ortega's] appearance at future Court hearings while addressing the danger to other persons or the community." Dkt. No. 17 at 2. He has been detained since October 18, 2022. Dkt No. 17; *see also* Dkt. No 172 at 3–4.

Once Mr. Ortega pleaded guilty to Conspiracy to Commit Robbery in violation of 18 U.S.C. § 371 and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) on September 3, 2025, Dkt. Nos. 168–69, 18 U.S.C. § 3143(a)(2) required that he be detained pending sentencing unless (1) the Court found that there was "a substantial likelihood that a motion for acquittal or new trial will be granted" or an attorney for the Government recommended that no sentence of imprisonment be imposed on Mr. Ortega; and (2) the Court found "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." After this Court took Mr. Ortega's plea, no party sought a change in his detention status. This Court did not release him, and instead directed that he remain in custody pending sentencing. Dkt. No. 167. Mr. Ortega's sentencing is scheduled for November 19, 2025 at 10:00 a.m. *Id.*

## II.  DISCUSSION

**A.  Mr. Ortega Seeks Temporary Release for Medical and Dental Treatment**

Following his guilty plea, Mr. Ortega filed a motion requesting that the Court temporarily

release him from detention "on October 6, 2025, from 11:00 AM to 5:00 PM and on October 8, 2025 from 8:00 AM to 5:00 PM" so that he may obtain dental and medical treatment "for chronic ailments that arose during his 35 months of pretrial incarceration." Dkt. No. 172 at 1. Mr. Ortega's family scheduled outside dental and medical appointments on those dates "to compensate for the treatment [Mr. Ortega] has not received, and likely will not receive" at the Federal Detention Center at SeaTac ("FDC SeaTac"). *Id.*

Mr. Ortega says that he "is suffering from untreated dental and medical ailments" that he has "reported multiple times . . . to FDC medical and dental personnel." *Id.* at 4 (citation modified). These include issues with his wisdom teeth, dislodgment of a dental filling on a back molar, and lower abdominal pain. *Id.* at 4–5. For the lower abdominal pain, Mr. Ortega reports that he had two "clinical encounter[s] at FDC" and was transported to the emergency room "to rule out appendicitis," but "[t]he cause of the pain is unknown" and "staff has been unable to provide a clinical diagnosis." *Id.* Mr. Ortega states that "[t]here is no recent record of any imaging to further assess the root of [his] complaint" but acknowledges that the Bureau of Prisons ("BOP") has tentatively scheduled a "gastroenterology appointment" for October 18, 2025. *Id.* at 5.

In support of his motion, Mr. Ortega included numerous messages between himself and FDC SeaTac staff between February 6 and 18, 2025 in which he described his ailments and requested care. Dkt. No. 171-1. FDC SeaTac staff responded that Mr. Ortega was "assessed by the RN" on February 6, 2025 and was "scheduled with the APP [Advanced Practice Provider] for further evaluation." *Id.* at 5. After further complaints, FDC SeaTac staff responded that Mr. Ortega had "been evaluated at the hospital previously" for the reported ailment and that he would be "seen for [a] sick call this week." *Id.* at 12. Mr. Ortega also provided some of his FDC medical records, which reflect "clinical encounter[s]" on February 11, 2025 and August 18, 2025 for abdominal pain. Dkt. No. 171-2. The notes from the February 11, 2025 encounter state that Mr. Ortega was

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 3

"sent to ER" to rule out appendicitis. *Id.* at 4. The emergency room "workup . . . includ[ed] a CT scan and bloodwork," which were both "negative." *Id.* at 6; *see also* Dkt. No. 183-1 at 59–79. The notes from the August 18, 2025 encounter reflect the following treatment plan: a "trial" of medication; urine, fecal and blood testing; and a consultation with gastroenterology. Dkt. No. 171-2 at 8. The notes also state that Mr. Ortega "has refused bloodwork several times," *id.* at 7, and additional records provided by the Government document those refusals, Dkt. No. 183-1 at 53–57.

The Government provided FDC dental records for Mr. Ortega, which reflect a dental "encounter" on August 20, 2025. Dkt. No. 183-1 at 50–52. The notes state that Mr. Ortega expressed concerns about a broken filling and pain in his wisdom teeth and that radiographs were completed. *Id.* On August 26, 2025, a dentist reviewed these notes and documented that Mr. Ortega would be brought "back on call out list." *Id.* at 49. On September 19, 2025, Mr. Ortega was seen by the dentist but "refused to fill out sick call form" and "initially refused to allow [the] dentist to even look at the tooth saying that radiograph was enough to diagnose need for a filling." Dkt. No, 187-1 at 3. Mr. Ortega then "left [the] dental clinic refusing any further evaluation" but eventually returned, and the dentist explained the "need for extraction." *Id.* Mr. Ortega purportedly "continued to want a filling only" and therefore "refused extraction." *Id.*

Finally, Mr. Ortega includes a recent report from the Department of Justice's Office of the Inspector General that documents significant issues with inmate healthcare at FDC SeaTac. Dkt. No. 172 at 5 (citing Off. of the Inspector Gen., U.S. Dept. of Justice, No. 25-081, Inspection of the Federal Bureau of Prisons' Federal Detention Center SeaTac (Sept. 2025)); *see also* Dkt. No. 173-3. The report followed an "unannounced inspection of FDC SeaTac" and identifies "serious issues with provision of inmate healthcare," including "delays in treating both routine and serious inmate health conditions, a backlog of laboratory orders," and "unsafe medication management and administration practices," among other issues. Dkt. No. 173-3 at 3.

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 4

B.    **This Court's Jurisdiction over Mr. Ortega's Request is Questionable**

Again, Mr. Ortega seeks "temporary release" to "compensate for the treatment he has not received" while confined. Dkt. No. 172 at 1. He advances arguments about his "rights relative to conditions of confinement and receipt of medical care" under the Fourteenth Amendment. *Id.* at 2–3. Generally, federal inmates may only challenge the conditions of their confinement pursuant to an action brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), which must be filed as a separate civil action and cannot be entertained in the inmate's criminal case. *See Greenhill v. Lappin*, 376 F. App'x 757, 757 (9th Cir. 2010) ("The appropriate remedy for Greenhill's claim, which relates to the conditions of his confinement, lies in a civil rights action under *Bivens*[.]").[1] Thus, several courts have determined that a defendant cannot challenge conditions of confinement through a motion filed in their criminal case. *See, e.g., United States v. Carmichael*, 343 F.3d 756, 760–61 (5th Cir. 2003); *United States v. McConneyhead*, 2 F. App'x 330, 331 (4th Cir. Jan. 24, 2001); *United States v. Darcy*, No. 1:17-CR-00036-MR-WCM, 2020 WL 2573251, at *4 (W.D.N.C. May 21, 2020).

However, an exception to this rule arises when a defendant's conditions of confinement violate his Sixth Amendment right to counsel. *See Falcon v. U.S. Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995) (if a defendant's Sixth Amendment right to counsel "is being infringed, [the district judge] has the statutory authority to protect [the defendant's] access to counsel"); *United States v. Loera*, No. CR 13-1876 JB, 2017 WL 3098257, at *27–28 (D.N.M. June 22, 2017); *United States v. Wade*, No. 3:07-cr-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009). Importantly, though, "to prevent circumvention of the obligation to exhaust administrative remedies before seeking judicial relief, and to ensure that the persons responsible

---

[1] A federal prisoner seeking injunctive relief cannot bring a *Bivens* action until he has first exhausted any available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 5

for the custody and care of the defendant are properly notified and brought before the court, any complaints about the conditions of confinement that do not concern a defendant's access to counsel or the ability to prepare a defense" are not properly before the Court. *United States v. Carlos Martin*, No. 2:18-CR-158-FtM-66NPM, 2020 WL 4504949, at *1 (M.D. Fla. Aug. 5, 2020); *see also United States v. Kahn*, No. 17-CR-0029-ABJ, 2019 WL 3977353, at *2 (D. Wyo. Mar. 29, 2019) ("[B]eyond ensuring a detained defendant's reasonable access to counsel and ability to prepare their defense, the Court's authority to redress conditions-of-confinement issues is severely limited within a criminal case."); *United States v. Andrews*, No. 1:12-CR-100, 2014 WL 1379683, at *3 (N.D. W. Va. Apr. 8, 2014).

With respect to requests for release that do not fall into the prohibited category above, Section 3145(c) permits a judicial officer to release a defendant subject to detention under 18 U.S.C. § 3143(a)(2) if (1) the defendant "meets the conditions of release set forth in section 3143(a)(1)" (i.e., clear and convincing evidence demonstrates that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released"), and (2) "it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[2] Here, the Court is skeptical that it can entertain Mr. Ortega's motion because it pertains only to detention conditions, which generally must be filed as a separate civil action. *See Greenhill*, 376 F. App'x at 757. However, the Court need not decide the issue because even assuming without deciding that the Court had jurisdiction to hear Mr. Ortega's motion, his request does not satisfy the legal standards laid out above.

---

[2] As the Government explains, Mr. Ortega's motion relies on the wrong law. Dkt. No. 181 at 3–4. He requests release under 18 U.S.C. §§ 3142(i) and 3145(b). Dkt. No. 172 at 1. Section 3142(i) only applies to pre-trial defendants, which Mr. Ortega is not given that he has been adjudged guilty, Dkt. Nos. 168–69. And Section 3145(b) does not apply because this Court—which has "original jurisdiction over the offense"—ordered Mr. Ortega detained, Dkt. No. 167, so the present motion does not seek review of an order "by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense," 18 U.S.C. § 3145(b).

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 6

**C.      The Court Denies the Motion for Temporary Release**

Mr. Ortega fails to show that (1) clear and convincing evidence demonstrates he "is not likely to flee or pose a danger to the safety of any other person or the community if released," or that (2) "it is clearly shown there are exceptional reasons [his] detention would not be appropriate," both of which are required for release under Section 3145(c). Moreover, Mr. Ortega does not show that his dental and medical issues infringe on his Sixth Amendment right to counsel.

> 1. <u>Clear and convincing evidence does not support that Mr. Ortega is unlikely to flee or pose a danger if released</u>

Mr. Ortega argues that he "is not a risk to fail to self-surrender" because "[f]ailure to do so would be a breach of his plea agreement," which would have significant consequences for his potential sentence and could result in new charges. Dkt. No. 172 at 6. This argument is circular. If fear of legal consequences were enough to eliminate flight risk, then it would be unnecessary for the Court to consider flight risk at all. Mr. Ortega does not explain why the Court should see his incentives as different from any other defendant awaiting sentencing following a plea agreement. Moreover, Mr. Ortega is facing a significant sentence—his plea agreement allows the Government to recommend up to 120 months of imprisonment. Dkt. No. 168 at 9–10. The prospect of a lengthy sentence could very well elevate the risk of flight, as fleeing could be seen as a preferable alternative to prolonged imprisonment. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); *United States v. Londono-Villa*, 898 F.2d 328, 329 (2d Cir. 1990) (defendant having been convicted and facing significant sentence "has a powerful incentive to flee that did not exist pre-trial"); *United States v. Carlson*, No. CR17-5188RBL, 2019 WL 2140582, at *2 (W.D. Wash. May 16, 2019) ("[G]iven the length of his sentence, [defendant] also has incentive to flee. Although he suffers from medical conditions, this

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 7

alone will not keep him from fleeing a lengthy period of incarceration."). Legal consequences have not deterred Mr. Ortega from flouting court orders in the past. For example, at the time of the offense in this case, Mr. Ortega was purportedly in the community on an appearance bond for firearm charges. Dkt. No. 45 at 6. He has also failed to appear multiple times. *Id.* at 4–5. Accordingly, clear and convincing evidence does not support that Mr. Ortega is not likely to flee.

Mr. Ortega next argues that he "will not pose a danger to any other person or the community" because he "will be in the care and custody of his mother," will only be released for "a short number of hours on two separate days," and "during the major part of the temporary release time, he will be at a medical professional office receiving dental or medical treatment." Dkt. No. 172 at 6. Mr. Ortega provides no information on how his mother will prevent him from posing a danger to the community, and the Court is concerned about the extent to which Mr. Ortega's mother understands his complex issues. For example, Mr. Ortega's mother told pre-trial services that she asked Mr. Ortega whether he used controlled substances besides marijuana, and "he told her he does not do 'things like that'"; however, when asked by pre-trial services, Mr. Ortega reported significant alcohol and controlled substance usage. Dkt. No. 45 at 3.

Moreover, Mr. Ortega has a lengthy criminal history for his age. While a juvenile, Mr. Ortega was convicted of Second Degree Robbery, Third Degree Escape, Taking a Motor Vehicle Without Permission, Unlawful Firearms Possession, First Degree Robbery with a Deadly Weapon, Second Degree Burglary, Obstruction, Carrying a Stolen Loaded Firearm, and Conspiracy to Commit Crime. *Id.* at 4. In the short time that Mr. Ortega was an adult prior to his arrest in this case, he committed Conspiracy to Commit Robbery in violation of 18 U.S.C. § 371 and Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See* Dkt Nos. 167–69. He faces a presumption of detention because of the seriousness of these offenses. 18 U.S.C. § 3143(a)(2). And these offenses are indeed serious: Mr.

Ortega admits that he conspired with others "to rob banks and marijuana dispensaries throughout the Western District of Washington" over a period of at least five months. Dkt. No. 168 at 6. In one bank robbery in June 2022, Mr. Ortega and a minor conspirator pointed firearms "directly at the bank tellers and forcefully pushed them into back areas of the bank, while demanding to know where the money was." *Id.* at 7. "Ortega intentionally made a display of force that reasonably caused the employee of the [bank] to fear bodily harm and that their life was in jeopardy due to the use of the dangerous weapon." *Id.* Later the same day, Ortega and his coconspirator robbed a credit union, where they again "brandished the firearms" in view of the employees and customers of the credit union and "each took an employee at gunpoint and forced the employee to unlock a safe filled with cash dispensers." *Id.* at 7–8. Ortega again "intentionally made a display of force that reasonably caused the employee of the [credit union] to fear bodily harm and that their life was in jeopardy due to the use of the dangerous weapon." *Id*. When police began following the car in which Mr. Ortega fled, he "eluded police and attempted a carjacking by rushing a woman who was attempting to back out of her driveway to try and gain entry into her car." *Id.* at 8. This criminal history raises serious concerns about public safety if Mr. Ortega were temporarily released.

Nothing Mr. Ortega has submitted mitigates the public safety concerns associated with these offenses, especially considering the length and severity of his prior criminal history. Accordingly, Mr. Ortega has not shown by clear and convincing evidence that he is "not likely to flee or pose a danger to the safety of any other person or the community if released."

   2. <u>It is not clearly shown that exceptional reasons make Mr. Ortega's detention inappropriate</u>

Release is also not appropriate under Section 3145(c) because exceptional reasons are not clearly shown. The Court has broad discretion to "consider all the particular circumstances of the case" when determining if exceptional circumstances exist. *United States v. Garcia*, 340 F.3d

1013, 1018 (9th Cir. 2003). The need for outside medical care can constitute an exceptional reason under narrow circumstances when the need is substantiated by the record. *Id.* at 1019–20; *see also Richard Has the Pipe*, 2010 WL 2265764 at *4 ("The Defendant testified that his doctor would like to perform surgery on his other knee, but he did not testify that this surgery was medically necessary at this time. The Court is confident the local jail facility and the Marshal's office can arrange for medical care should it become necessary as can the Bureau of Prisons after sentencing.").

Here, Mr. Ortega's purported need for outside medical care is not supported by the record and therefore does not constitute an exceptional reason making his detention inappropriate. To the contrary, the record reflects that the BOP responded to Mr. Ortega's informal complaints and provided medical care. *See generally* Dkt. Nos. 183-1, 187-1. For example, the BOP sent Mr. Ortega to the emergency room to rule out appendicitis after he complained of abdominal pain. Dkt. No. 171-2 at 4. When he made new complaints about abdominal pain, the BOP created a treatment plan including a "trial" of medication; urine, fecal, and blood testing; and a consultation with gastroenterology. *Id.* at 8. Despite his complaints, Mr. Ortega's records reflect that he "has refused bloodwork several times." *Id.* at 7; *see also* Dkt. No. 183-1 at 53–57.

Regarding his complaints about dental issues, Mr. Ortega was seen by a dentist on September 19, 2025 but "refused to fill out [a] sick call form" and "initially refused to allow [the] dentist to even look at the tooth saying that radiograph was enough to diagnose need for a filling." Dkt. No, 187-1 at 3. Mr. Ortega disagreed with the dentist's recommendation for extractions— wanting "a filling only" and therefore refused treatment. *Id.* An inmate is not entitled to his pick among medically appropriate treatments. *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical

professionals—concerning what medical care is appropriate does not amount to deliberate indifference." (citation modified)).

Finally, the Court appreciates Mr. Ortega's submission of the recent report from the Department of Justice's Office of the Inspector General documenting issues with inmate healthcare at FDC SeaTac. Dkt. No. 172 at 5 (citing Off. of the Inspector Gen., U.S. Dept. of Justice, No. 25-081, Inspection of the Federal Bureau of Prisons' Federal Detention Center SeaTac (Sept. 2025)); *see also* Dkt. No. 173-3. While the report identifies numerous issues, such as "delays in treating both routine and serious inmate health conditions, a backlog of laboratory orders," and "unsafe medication management and administration practices," Dkt. No. 173-3 at 3, Mr. Ortega's care does not seem materially impacted by those issues. As discussed above, the BOP has responded to Mr. Ortega's complaints and offered treatment. Mr. Ortega's motion, at its core, is a dispute about the type of medical care offered during detention, not a lack of care caused by administrative issues at FDC SeaTac. *See United States v. Gladney*, 265 F. App'x 681, 683–84 (9th Cir. 2008) (finding that exceptional reasons did not exist where "[t]here [we]re no circumstances surrounding the offense that ma[d]e this an unusual case, and [inmate did] not establish[] that the hardships of prison would be unusually harsh for him").

    3. <u>Mr. Ortega does not argue that his issues infringe on his Sixth Amendment right to counsel, nor does the record suggest that is the case</u>

Beyond the request for release pending sentencing, Mr. Ortega makes allegations that his medical and dental care are constitutionally deficient. *See* Dkt. No. 172 at 3. As discussed above, a defendant may only challenge conditions of confinement in his criminal case if those conditions violate his Sixth Amendment right to counsel. *See Falcon*, 52 F.3d at 139. Otherwise, challenges to the conditions of an inmate's confinement must be advanced in a separate *Bivens* action. *See Greenhill*, 376 F. App'x at 757.

1    Mr. Ortega makes no allegation that his dental and medical problems interfere with his
2    Sixth Amendment right to counsel. And the motion and exhibits filed in this case suggest that Mr.
3    Ortega is able to effectively communicate with his counsel. Accordingly, to the extent Mr. Ortega's
4    motion argues that he is receiving constitutionally inadequate medical care, the Court does not
5    have jurisdiction to entertain it.

**D.    The Court Grants the Motions to Seal**

Both Mr. Ortega and the Government have filed motions to seal documents filed in connection with this motion. Dkt. Nos. 170, 182. Mr. Ortega seeks to seal "personal identifying information of third parties" and medical records, Dkt. No. 170, while the Government seeks to seal only medical records, Dkt. No. 182.

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Despite the public's presumptive right of access to documents in criminal proceedings, a document may remain under seal "when (1) sealing a document serves a compelling interest, (2) that is substantially likely to be harmed if the document is not sealed, and (3) there are no less restrictive alternatives for protecting the interest." *United States v. Parson*, No. 3:15-cr-05262-DGE, 2022 WL 558221, at *2 (W.D. Wash. Feb. 24, 2022) (citing *United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017)).

The Court has reviewed the documents at issue, which contain Mr. Ortega's sensitive medical information and personally identifying information of Mr. Ortega's family. Dkt. Nos. 171, 183, 187. The Court finds that sealing the documents would serve a compelling interest in protecting Mr. Ortega's medical privacy and his family's personally identifying information. *See, e.g.*, *Karpenski v. Am. Gen. Life Co.*, LLC, No. 2:12-cv-01569-RSM, 2013 WL 5588312, at *1

(W.D. Wash. Oct. 9, 2013) (need to protect medical privacy qualifies as a "compelling reason" for sealing records); *Hadley v. Kellogg Sales Co.*, No. 16-cv-04955-LHK, 2018 WL 7814785-LHK, at *3 (N.D. Cal. Sept. 5, 2018) ("The Court agrees that compelling reasons exist to seal sensitive personal information such as . . . phone numbers[.]"). There are no less restrictive means of protecting Mr. Ortega's privacy or the personally identifying information of his family. Accordingly, the Court grants the motions to seal.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Ortega's Motion for Temporary Release, Dkt. No. 172, and GRANTS both Mr. Ortega's and the Government's Motions to Seal, Dkt. Nos. 170, 182. The documents at docket entries 171, 183, and 187 may remain under seal.

Dated this 3rd day of October, 2025.

Lauren King
United States District Judge

ORDER DENYING MOTION FOR TEMPORARY RELEASE - 13